UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

SHARON JENKINS,                )
                               )
        *Plaintiff*,           )
                               )        Case No. 4:08-cv-75
v.                             )        Judge Mattice
                               )
JEFFREY MARVEL, M.D., MARVEL   )
CLINIC, P.C., THE CENTER FOR DAY )
SURGERY, INC., PENN PLASTIC    )
SURGERY OF TULLAHOMA, P.C.,    )
VERTRUE, INC., and ACQUISITION )
PARTNERS, INC., f/k/a MY CHOICE )
MEDICAL, INC. d/b/a DoctorsSayYes.net )
and/or DoctorsSayYes.com, a subsidiary )
of Vertrue, Inc.,              )
                               )
        *Defendants.*          )

## MEMORANDUM AND ORDER

Before the Court are the following Motions:

•      Motion to Dismiss pursuant to Rule 12(b)(2) and 12(b)(6) of the Federal

Rules of Civil Procedure by Defendant Vertrue, Inc. [Court Doc. 30];

•      Motion to Dismiss pursuant to Rule 12(b) of the Federal Rules of Civil

Procedure by Defendant My Choice Medical, Inc. [Court Doc. 32]; and

•      Supplemental Motion to Dismiss by Defendants Jeffrey Marvel, M.D., Marvel

Clinic, P.C., Penn Plastic Surgery of Tullahoma, P.C., and The Center for

Day Surgery, Inc. [Court Doc. 40].

For the reasons discussed below, the Motions to Dismiss filed by Defendant Vertrue, Inc.

and Defendant My Choice Medical, Inc. [Court Docs. 30 & 32 ] will be **GRANTED**.  The

Supplemental Motion to Dismiss filed by Defendants Jeffrey Marvel, M.D., Marvel Clinic,

P.C., Penn Plastic Surgery of Tullahoma, P.C., and The Center for Day Surgery, Inc. [Court Doc. 40] will be **DENIED**.

I.     **STANDARDS OF REVIEW**

    A.     **Failure to State a Claim - Fed. R. Civ. P. 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint that fails to state a claim upon which relief can be granted.  The purpose of Rule 12(b)(6) is to permit a defendant to test whether, as a matter of law, the plaintiff is entitled to relief even if everything alleged in the complaint is true.  *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).  To survive a motion to dismiss under 12(b)(6), plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."  *Assoc. of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (citing *Bell Atlantic v. Twombly*, 127 S.Ct. 1955, 1974 (2007)).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id*.  The Court must determine not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support his claims.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  In making this determination, the Court must construe the complaint in the light most favorable to plaintiff and accept as true all well-pleaded factual allegations.  *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999).  The Court need not accept as true mere legal conclusions or unwarranted factual inferences.  *Id.*

Recently, the Supreme Court confirmed that Rule 12(b)(6) must be read in

conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1964 (2007); Fed. R. Civ. P. 8(a)(2). A court must not dismiss a complaint for failure to state a claim unless the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 127 S. Ct. at 1974; see also *Erickson v. Pardus,* 127 S. Ct. 2197, 2200 (2007). Although material allegations in the complaint must be accepted as true and construed in the light most favorable to the nonmoving party, a court is not required to accept conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. *Id.*

"Two working principles underlie [the Supreme Court's"] decision in *Twombly.*" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949-1951 (2009). "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (internal citations and quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (internal citations omitted). While "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.*

"Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal,* 129 S. Ct. at 1949-1951. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (internal citations and quotations omitted). "But where the well-pleaded facts do not permit the court to infer more

than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – that the pleader is entitled to relief." *Id.* (internal citations and quotations omitted).

## B.    Personal Jurisdiction - Fed. R. Civ. P. 12(b)(2)

When the issue of personal jurisdiction is raised by way of a motion under Rule 12(b)(2), the plaintiff has the burden of establishing that jurisdiction exists. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). The plaintiff may not meet its burden by simply standing on its pleadings; rather, the plaintiff must set forth, by affidavit or otherwise, specific facts showing that the Court has jurisdiction. *Id.*

Presented with a properly supported 12(b)(2) motion and opposition, the Court has three procedural alternatives: decide the motion upon the affidavits alone, permit discovery on the motion, or conduct an evidentiary hearing to resolve any factual questions. *Id.*; *Kelly v. Int'l Capital Res., Inc.*, 231 F.R.D. 502, 508-09 (M.D. Tenn. 2005). If the Court does not conduct an evidentiary hearing, then the plaintiff need only make a *prima facie* showing that personal jurisdiction exists. *Theunissen*, 935 F.2d at 1458; *Kelly*, 231 F.R.D. at 509. In such an instance, the pleadings and affidavits are viewed in the light most favorable to the plaintiff, and the Court will not consider the controverting assertions of the defendant. *Theunissen*, 935 F.2d at 1458-59; *Kelly*, 231 F.R.D. at 509. If the Court does conduct an evidentiary hearing, then the plaintiff must establish personal jurisdiction by a preponderance of the evidence. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998); *Kelly*, 231 F.R.D. at 509.

## II.    FACTS AND PROCEDURAL HISTORY

Plaintiff Sharon Jenkins ("Plaintiff") originally filed this medical malpractice and

Tennessee Consumer Protection Act ("TCPA") action against all Defendants on July 2, 2007 under docket number 4:07-cv-41. After Defendants had responded to Plaintiff's Complaint, some of the parties entered a Stipulation of Dismissal without prejudice. (4:07-cv-41, Court Doc. 33.) Plaintiff then filed a Motion to Dismiss all remaining claims against the other defendants without prejudice. (4:07-cv-41, Court Doc. 34.) The Court rejected the stipulation under Federal Rule of Civil Procedure 41(a)(1) because not all parties were joined, but ordered that the case be dismissed without prejudice pursuant to Fed. R. Civ. P. 41(a)(2) as to all parties. (4:07-cv-41, Court Doc. 35.) The case was dismissed on October 18, 2007. (*Id.*)

Plaintiff re-filed this action on October 17, 2008 against the same Defendants and filed an Amended Complaint on May 14, 2009. (Court Docs. 1 & 24.) The Amended Complaint alleged that Dr. Jeffrey Marvel, M.D. ("Dr. Marvel") performed an abdominoplasty with avelar liposuction on July 11, 2006 that resulted in injuries to Plaintiff. (Court Doc. 24, Am. Compl. ¶ 1.) The Marvel Clinic, P.C. ("Clinic") and The Center for Day Surgery, Inc. ("Center") appear to be the entities through which Dr. Marvel practices and performs cosmetic surgeries. (*Id.* ¶¶ 4, 16.) Penn Plastic Surgery of Tullahoma, P.C. ("Penn Plastic") appears to be the entity that financed Plaintiff's surgery. (*Id.* ¶ 15.) My Choice Medical, Inc.[1] ("My Choice"), operating as DoctorsSayYes.net, is alleged to have placed an advertisement in *Cosmopolitan* magazine that offered financing for cosmetic surgeries and free consultations with Board-certified surgeons, and Plaintiff responded to that advertisement. (*Id.* ¶ 10-12.) Vertrue, Inc. ("Vertrue") is the parent company of My

---

[1] This Defendant is properly titled Acquisition Partners Group, Inc., f/k/a My Choice Medical, d/b/a DoctorsSayYes.net and/or DoctorsSayYes.com. (Am. Compl. ¶ 7.)

Choice.  (*Id.* ¶ 7.)

Plaintiff asserted two counts against all Defendants.  The first count is for medical negligence and alleges that Defendants breached a duty to provide medical care and treatment within the applicable standard of care.  (*Id.* ¶ 23.)  The second count is for false and deceptive advertising under the TCPA and alleges that Defendants operated a joint venture and should be jointly and severally liable, or alternatively that Defendants should all be liable because they were in an agency relationship with Dr. Marvel.  (*Id.* ¶ 25.)  Plaintiff asserted that Defendants engaged in false and deceptive advertising by claiming that the physicians were qualified to perform certain procedures, and this deception was done willfully or knowingly in violation of the TCPA.  (*Id.* ¶ 26.)

All Defendants filed Motions to Dismiss.  Defendants Dr. Marvel, Center, Clinic, and Penn Plastic filed a collective Motion to Dismiss and Penn Plastic filed a separate Motion to Dismiss.  (Court Docs. 2 & 3.)  Vertrue and My Choice filed their Motions to Dismiss after Plaintiff filed her Amended Complaint.  (Court Docs. 30 & 32.)  The collective Motion and Penn Plastic's separate Motion were then re-filed as Supplemental Motions to Dismiss. (Court Docs. 39 & 40.)  The Court terminated these Motions as duplicative of the earlier Motions and denied the initial documents without prejudice.  (Court Doc. 42.)  Defendant Penn Plastic was dismissed from this action pursuant to the stipulation of the parties and the Court's Order of October 15, 2009.  (Court Docs. 45 & 46.)

## III.  ANALYSIS

### A.  Vertrue, Inc.'s  Motion to Dismiss [Court Doc. 30]

Vertrue moved to be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to

state a claim for which relief may be granted.  In the alternative, Vertrue moved to be dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction.  The Court will address the two grounds separately.

### 1. 12(b)(6) Motion

Vertrue first moved to be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because the Amended Complaint fails to state a claim against it for which relief may be granted. (Court Doc. 31, Vertrue's Mem. in Supp. of Mot. to Dismiss at 1.)  Vertrue notes that it is only a parent corporation of another Defendant and its name appears only twice in the Amended Complaint, at paragraphs 6 and 7.[2]  (*Id.*)  Other than those paragraphs, Vertrue does not appear in the Amended Complaint, and there are no claims asserted against it directly, although Plaintiff refers to "Defendants" as a group when stating the two counts. (*Id.*)

Plaintiff responds to the 12(b)(6) motion by claiming that certain allegations in the Amended Complaint are directed "in part" at Vertrue. (Court Doc. 38, Pl.'s Resp. to Vertrue at 4.)  It appears that Plaintiff may have attempted to reproduce part of the Amended Complaint in this document, but there is only a blank space.  (*Id.* at 3-4.)  Nonetheless, the Court can determine from the context that Plaintiff's assertions involve claims under the TCPA.  Plaintiff states that "[t]hese allegation [sic] clearly state a claim upon which relief may be granted under the Tennessee Consumer Protection Act . . . ." (*Id.*)  Presumably, one of the paragraphs cited was 25 of the Amended Complaint, which alleges that all

---

[2]  Paragraph 6 lists the contact information for service on Vertrue, and paragraph 7 lists the contact information for service on Defendant My Choice and states that it is a subsidiary of Vertrue.  (Am. Compl. ¶¶ 6-7.)

Defendants were either engaged in a joint venture to invoke joint and several liability, or were operating under an agency relationship with Dr. Marvel to have imputed liability under the TCPA. (Am. Compl. ¶ 25.) Plaintiff further claims that there is no need to pierce the corporate veil because Vertrue is individually liable under the TCPA. (Pl.'s Resp. at 4.)

The Court must accept every factual statement in the Amended Complaint as true. *Mixon*, 193 F.3d at 400. Plaintiff's alternative theories of liability under the TCPA are legal conclusions, however, and the Court does not have to accept them as true. *Id*. Taking all the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has not alleged any facts to support any claim against Vertrue. If Plaintiff intends to proceed with a TCPA claim against this Defendant, Plaintiff must provide facts about Vertrue's role in the allegedly deceptive practice. Instead, the only factual information about Vertrue in the Amended Complaint–or in the Response to this Motion–is that Vertrue is the parent corporation of Defendant My Choice, the entity that placed the advertisement in *Cosmopolitan*. Plaintiff asserts no facts to establish that Vertrue had some direct part in the placement of the advertisement or that Vertrue is an alter ego of My Choice such that their activities are intertwined. Simply put, there are no facts alleged about Vertrue that would give rise to any direct claim against this Defendant.

Furthermore, Plaintiff asserts no facts to support either of the two legal theories that are purportedly intended to give rise to Vertrue's liability under the TCPA. There are no facts alleged to illustrate any joint venture between *all* of the Defendants that would include Vertrue, and there are no facts alleged to establish an agency relationship that would have the sweeping ramification of making every Defendant liable under the TCPA. Plaintiff cannot simply group Vertrue in with all other Defendants to attempt to state a successful

-8-

claim; there must be facts alleged in the Amended Complaint that would give rise to some potential liability of this Defendant. In the absence of such facts, the Court cannot just assume that Vertrue *may* be liable under the TCPA and permit Plaintiff to proceed against this party. Plaintiff failed to comply with this pleading requirement, and the Court concludes that Plaintiff has failed to state a claim against Vertrue for which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).

### 2. 12(b)(2) Motion

Vertrue also asserts a lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), claiming that Plaintiff failed to allege any contacts with Tennessee that would allow the Court to exercise jurisdiction over a Delaware corporation. (*Id.*) In this case, neither party has requested, nor has the Court held, an evidentiary hearing to determine if jurisdiction is appropriate. Therefore, the Court will evaluate whether Plaintiff has made a *prima facie* showing that personal jurisdiction exists. *See Theunissen*, 935 F.2d at 1458. This burden is quite low; Plaintiff must only "demonstrate facts which support a finding of jurisdiction." *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988) (citations and internal quotations omitted). Even viewing all facts in a light most favorable to Plaintiff, however, there are no facts asserted, either in the Amended Complaint or her Response, that establish minimum contacts–or contacts at all–sufficient to support the exercise of personal jurisdiction over Vertrue, a Delaware corporation. *Theunissen*, 935 F.2d at 1462.

Plaintiff states in her Response that "Vertrue committed violations of the Tennessee Consumer Protection act [sic] by enticing the Plaintiff to utilize the services of Defendant Marvel through false representations published and distributed by Vertrue within the State

of Tennessee."[3] (Pl.'s Resp. to Vertrue at 4.) This, Plaintiff claims, creates the necessary minimum contacts to allow the Court to exercise jurisdiction over Vertrue. (*Id.*) What Plaintiff asserts, however, does not relate to Vertrue's actions, but rather to the actions of Defendant My Choice and other non-named entities. Defendant My Choice placed the advertisement in *Cosmopolitan* and therefore may be said to have "distributed" it in a narrow sense, but without additional facts to prove otherwise, neither Vertrue nor My Choice was responsible for the publication of that magazine or its distribution in Tennessee.

Furthermore, My Choice's activities are not relevant to a personal jurisdiction inquiry as to Vertrue unless Plaintiff is attempting to impute personal jurisdiction of a subsidiary to its parent corporation. Even if that were the case–which is unclear from the pleadings–the personal jurisdiction of a subsidiary does not lead to automatic personal jurisdiction of a parent corporation unless there is evidence that the parent acts as an alter ego of the subsidiary.

> The alter-ego theory of personal jurisdiction, in the parent-subsidiary context, provides that "a non-resident parent corporation is amenable to suit in the forum state if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction."

*Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp.*, 545 F.3d 357, 362

---

[3] The Court does not understand how this assertion could be true when there is no evidence asserted that Vertrue played any part in the placement of the advertisement or its publication or distribution in *Cosmopolitan*. Furthermore, Plaintiff is a Kentucky resident and saw the advertisement in *Cosmopolitan* in Kentucky, not in Tennessee, and would have been "enticed" to respond to the advertisement in Kentucky, not Tennessee. The fact that Plaintiff's alleged injuries occurred in Tennessee does not automatically give rise to a TCPA claim under the circumstances of this case, and these claims may require further scrutiny. The viability of Plaintiff's TCPA claims, however, is not before the Court at this time.

(6th Cir. 2008) (citation omitted). Depending on the state of incorporation, there are certain factors the Court can assess to determine if Vertrue is an alter ego of My Choice. Such an inquiry is impossible at this time, however, as Plaintiff does not allege sufficient facts about either corporation to allow the Court to make such a determination.

Instead of offering facts that might demonstrate contacts with Tennessee, Plaintiff simply relies on a conclusory assertion that Vertrue violated the TCPA. (Pl.'s Resp. to Vertrue at 4.) Yet, as stated above, Plaintiff offers no facts to illustrate how Vertrue could conceivably be liable under this Tennessee statute. The Court cannot simply assume that potential violation of a state law, without any facts to support this alleged violation, would give rise to personal jurisdiction within that state. Furthermore, the Court cannot assume that Vertrue is an alter ego of My Choice and impute any personal jurisdiction of the subsidiary to the parent corporation when no such contention and no facts in support of such a contention have been raised. Plaintiff has therefore failed to make a *prima facie* case of personal jurisdiction.

Accordingly, the Court finds that Plaintiff has failed to state a claim against Vertrue for which relief may be granted, and has further failed to make a *prima facie* case of personal jurisdiction over this Defendant. Therefore, Vertrue's Motion to Dismiss is **GRANTED** on both 12(b)(6) and 12(b)(2) grounds.

### B.    My Choice Medical, Inc.'s Motion to Dismiss [Court Doc. 32]

Defendant My Choice has moved to be dismissed pursuant to Fed. R. Civ. P. 12(b)[4] based on the forum selection clause contained in the Patient Release of Liability and

---

[4] My Choice does not indicate which subsection of 12(b) applies. The Court will construe the Motion under Rule 12(b)(3) for improper venue because it involves a forum selection clause.

Waiver that Plaintiff signed on May 25, 2006. (Court Doc. 33, My Choice Mem. in Supp. of Mot. to Dismiss at 1-2.) The relevant language in this document reads as follows:

> It is agreed between the parties that, regardless where venue lies, any lawsuit arising from or relating to the Surgery shall be filed in the state court of Monroe County, Pennsylvania. It is further agreed that in the event any lawsuit is filed other than in the state court of Monroe County, Pennsylvania, it shall be moved to said county on motion of, and at the option of, any of the released parties addressed herein.

(4:07-cv-41,[5] Court Doc. 27-1.) My Choice claims that the forum selection clause in this document is enforceable and Plaintiff is restricted to filing claims in the state court of Monroe County, Pennsylvania. (My Choice Mem. at 4.) Plaintiff responds by citing a number of factors listed in American Jurisprudence to provide support for the contention that the forum selection clause should be unenforceable. (Court Doc. 37, Pl.'s Resp. to My Choice at 3-4.) More specifically, Plaintiff contends that this was a contract of adhesion and there was unequal bargaining power in its execution because she lacked the business sophistication to negotiate terms. (*Id.* at 5-6.) Plaintiff also contends that the clause was hidden in the document and argues that enforcement will make it unduly burdensome for Plaintiff to continue to litigate her claims against My Choice. (*Id.*)

My Choice filed a Reply, disputing that there was unequal bargaining power and arguing against finding that Plaintiff should not be bound to the contract because she is unsophisticated in business. (Court Doc. 41, My Choice's Reply at 2.) My Choice asserts that Plaintiff had seven weeks between signing the contract and having the surgery and could have decided to forego surgery if she did not accept the terms in the document. (*Id.*

---

[5]     My Choice neglected to attach the form to their Motion or Memorandum filed in this case. They did, however, attach the form to their Motion to Dismiss filed in Plaintiff's first action.

at 2-3.)  Furthermore, the document was brief and was clearly labeled as a "Patient Release of Liability and Waiver."  (*Id.* at 3.)  Finally, My Choice contends that Plaintiff's claims against it are wholly dependent on the success of her medical malpractice claims against Dr. Marvel, because it was Dr. Marvel's allegedly negligent acts, and not My Choice's advertisement, that is the true cause of her injury.  (*Id.*)

The United States Court of Appeals for the Sixth Circuit recently held that federal courts sitting in diversity should apply federal law when assessing the enforceability of a forum selection clause.  *Wong v. Partygaming Ltd.*, --- F.3d ---, 2009 WL 4893955 at *3 (6th Cir. 2009).  To that end, the Sixth Circuit has held that "forum-selection clauses generally are enforced by modern courts unless enforcement is shown to be unfair or unreasonable."  *Security Watch, Inc. v. Sentinel Systems, Inc.*, 176 F.3d 369, 374 (6th Cir. 1999).  The Sixth Circuit applies a Restatement test to determine reasonableness, and the Court must review the following factors:

> (1) whether the clause was obtained by fraud, duress, abuse of economic power, or unconscionable means; (2) whether the designated forum would be closed to suit or would not effectively handle the suit, or (3) whether the designated forum would be so seriously inconvenient that to require the plaintiff to bring suit there would effectively deprive [her] of [her] day in court.

*Long v. Dart Int'l, Inc.*, 173 F. Supp.2d 774, 776-77 (W.D. Tenn. 2001) (citing *Security Watch*, 176 F.3d at 375).  After this initial analysis, the clause is "'subject to judicial scrutiny for fundamental fairness.'"  *Id.* at 777 (quoting *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991)).

Regarding the first factor, there is no evidence of fraud, duress, abuse of economic power, or unconscionability.  Plaintiff does not allege that her signature was obtained

-13-

fraudulently or through duress, and there is no contention that this document is unconscionable. There is also no evidence before the Court that would indicate that My Choice abused its economic power. My Choice offered the opportunity to receive a consultation and financing for elective plastic surgery. Plaintiff accepted this offer. The fact that Plaintiff is an individual and My Choice is a company with greater economic power does not, by itself, provide a basis for finding abuse. The document is no more than one and a half pages and is clearly a contract. The title is in bold face, underlined, and reads "Patient Release of Liability and Waiver." The type is of normal size throughout, there are spaces between each separate paragraph, and it is written in relatively plain language. It would take no more than a few minutes to read the entire document carefully. There is no evidence that Plaintiff was forced or coerced to sign the document, and the procedure was not medically necessary such that Plaintiff had no choice but to sign the contract or risk significant health consequences. Furthermore, there is no language in the document concerning penalties for cancellation of the surgery, and Plaintiff had several weeks prior to surgery to review the document carefully and reject the provisions if they were unacceptable. Therefore, the first factor weighs in favor of finding the forum selection clause reasonable.

The second factor also weighs in favor of reasonableness. Although Plaintiff would not be able to proceed in Pennsylvania state court with a claim under the Tennessee Consumer Protection Act because the statute of limitations has expired,[6] Plaintiff could likely proceed with a similar claim under the Pennsylvania Unfair Trade Practices and

---

[6] The TCPA has a statute of limitations of one year. *See* Tenn. Code Ann. § 47-18-110.

Consumer Protection Law ("UTPCPL"), 73 Pa. Const. Stat. Ann. § 201-1 *et seq*. The UTPCPL has a statute of limitations of six years, so Plaintiff's claim originating in 2006 would not be barred. *See Gabriel v. O'Hara*, 534 A.2d 488, 495 (Pa. Super. Ct. 1987) (holding that the UTPCPL is subject to the "six-year 'catchall'" statute of limitations). There is no reason that a Pennsylvania state court could not handle such a statutory claim.

As for the final factor of serious inconvenience, this factor does not weigh heavily enough against reasonableness to overcome the other factors. Plaintiff submits that it will be financially difficult to litigate this claim in Pennsylvania state court. While this may be true, Plaintiff opened herself up to this possibility by signing the document, accepting this clause, and later choosing to file this lawsuit. It is probably financially inconvenient for the majority of individuals who pursue litigation in foreign states, but that type of inconvenience is not serious enough to preclude enforcement of a forum selection clause. "Mere inconvenience or additional expense is not . . . the test for unreasonableness. Instead, Plaintiff must show that litigation [in the selected forum] 'will be so gravely difficult and inconvenient that [it] will for all practical purposes be deprived of [its] day in court.'" *Long*, 173 F. Supp.2d at 778 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972)). Plaintiff has not shown that dismissal of this Defendant based on the forum selection clause will deprive her of her day in court and, in fact, she will still be able to proceed with her medical malpractice claims against the other Defendants.

The Court finds that the forum selection clause is reasonable and must now turn to the eight factors that determine its fundamental fairness. These factors are as follows:

> (1) [T]he identity of the law which governs the construction of the contract; (2) the place of execution of the contract; (3) the place where the transactions have been or are to be

performed; (4) the availability of remedies in the designated forum; (5) the public policy of the initial forum state; (6) the location of the parties; (7) the relative bargaining power of the parties and the circumstances surrounding their dealings; and (8) the conduct of the parties.

*Long*, 173 F. Supp.2d at 777.  The contract does not have any provision indicating that it is subject to the laws of a particular state.  Since it was executed in Tennessee, however, it will be subject to Tennessee law.  *See Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 466 (Tenn. 1973).  The transaction at issue–Plaintiff's surgery–occurred in Tennessee.  These three initial factors weigh against fairness of the forum selection clause.  There is no indication that the remedy available to Plaintiff in Tennessee will not also be available in Pennsylvania.  Enforcement of the forum selection clause would not contravene Tennessee public policy.  Plaintiff is located in Kentucky and it appears that My Choice has its primary place of business in Stroudsburg, Pennsylvania, so neither party is located in Tennessee.  These three factors weigh in favor of fairness.

The seventh factor is fairly neutral.  It is true that the document is My Choice's standard contract for this purpose and that there are general disparities in bargaining power simply by virtue of the fact that My Choice, the company, offered this standard contract to Plaintiff, an individual who did not have legal representation before signing the document.  After review of the surrounding circumstances, however, the Court finds that this disparity may not be significant enough to deem the clause unfair.  The Court can contemplate situations in which unequal bargaining power might result in an unfair forum selection clause; for example, if this contract were between Plaintiff and the doctor performing the surgery, or if the surgery were medically necessary for Plaintiff's survival, a forum selection clause could be unfair because Plaintiff might have no choice but to sign

-16-

the document and accept any given terms. Likewise, if there was clear evidence that the party with greater power purposely chose an inconvenient forum to discourage individuals from filing suit, the bargaining power and circumstances would weigh in favor of finding the clause unfair.

The circumstances of this case are different. This contract was between Plaintiff and the "middleman" who arranged for a consultation and financing for her elective cosmetic surgery. Plaintiff had a choice to proceed with this surgery, and her claims against this company are essentially unrelated to a possible recovery for medical malpractice from those directly involved in the procedure. There is no evidence that the clause was intended to make it inconvenient for Plaintiff to file suit against My Choice. The forum selection clause in this document, therefore, is more likely to be fair and has fewer significant consequences than it might have in other situations where Plaintiff's ability to refuse certain provisions or seek recovery for her alleged injuries would be severely undercut.

Furthermore, even if this was a contract of adhesion,[7] the forum selection clause is not unenforceable or unfair solely due to that fact. "Enforceability generally depends on whether the terms of the contracts are beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable." *Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn. 1996) (citation omitted) (applying this principle in the context of arbitration clauses);

---

[7]     The Tennessee Supreme Court described adhesion contracts as "a standardized contract form offered . . . on essentially a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract." *Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn. 1996) (internal quotations and citations omitted).

*see also High v. Capital Senior Living Properties 2-Heatherwood, Inc.*, 594 F. Supp.2d 789, 799 (E.D. Mich. 2008) (stating that "courts will not invalidate adhesion contracts as a matter of law as long as the challenged provision is reasonable."). The Court does not perceive the forum selection clause in this contract as one which would exceed the expectations of an ordinary person, and it does not appear to be oppressive or unconscionable–at least not in the way that those terms are interpreted in Tennessee.[8] Accordingly, even if the Court credits Plaintiff's assertion that there was unequal bargaining power and this was a contract of adhesion, the clause is not necessarily unfair because the circumstances do not support a finding that the forum selection clause is oppressive or unconscionable. The Court finds that this factor does not weigh unequivocally in either direction and it is therefore neutral.

Finally, the conduct of the parties does not indicate any bad faith or fraud. There is no indication that My Choice selected the state court of Monroe County, Pennsylvania in an attempt to discourage claims against it; instead, that appears to be its primary business location. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991) (rejecting any suggestion of bad faith because the company had its principal place of business in the selected forum and conducted most of its business in that state). Furthermore, the contract is relatively short and Plaintiff should have been on notice of this

---

[8] "We find nothing in the Contracts' forum selection clauses to be either unconscionable or oppressive. The fact that a resident of Tennessee or any other state . . . would prefer to sue in his home state . . . does not, by itself, make[] the forum selection clauses oppressive or unconscionable." *Woodruff* v. *Anastasia Int'l, Inc.*, No. E2007-00874-COA-R3-CV, 2007 WL 4439677, at *5 (Tenn. Ct. App. Dec. 19, 2007). The Court notes that *Woodruff* involves a similar situation with a consumer and a company, and the forum selection clause at issue in that case was enforced. The *Woodruff* court stated that "[w]hile a customer such as Plaintiff would prefer not to have to litigate disputes with [the company] in a distant state, it is reasonable to expect that a corporation that has customers in many states may want to limit where it is subject to suit." *Id.* (citing *Carnival Cruise Lines*, 499 U.S. at 593).

-18-

provision either before signing the document or afterwards, when she had ample time before her surgery to reject this provision or the contract in its entirety. Plaintiff's failure to do so does not allow her to reject the clause. Therefore, this factor weighs in favor of fairness. Considering all eight factors, the Court finds that four weigh in favor of fairness, three weigh against, and one is neutral. Accordingly, the Court finds that the factors weigh in favor of finding the forum selection clause fundamentally fair.

After application of both tests, the Court finds that the forum selection clause is reasonable and that it is fundamentally fair. The Court notes that the party who challenges enforcement of a forum selection clause has the burden of showing that the clause is unreasonable, and "[i]n federal court, this is a particularly heavy burden of proof because forum selection clauses are presumptively enforceable." *Long*, 173 F. Supp.2d at 777 (citations omitted). Plaintiff has failed to provide the Court with additional information that might overcome the presumption of enforcement or the reasonableness and fairness of the clause. The Court concludes that the forum selection clause in the document Plaintiff executed with My Choice is enforceable. Plaintiff may only bring suit against My Choice in the state court of Monroe County, Pennsylvania. Accordingly, My Choice's Motion to Dismiss is **GRANTED**.

**C.      Jeffrey Marvel, M.D., Marvel Clinic, P.C., Penn Plastic Surgery of Tullahoma, P.C., and The Center for Day Surgery's Supplemental Motion to Dismiss [Court Doc. 40]**

Defendants Dr. Marvel, Clinic, Penn Plastic, and Center filed a collective Motion to Dismiss based on one particular theory–that Tennessee's new Medical Malpractice Act (the "Act") became effective on October 1, 2008, and Plaintiff failed to comply with the notice requirements in this statute when the action was re-filed on October 17, 2008.

-19-

(Court Doc. 40, Defs.' Mot. to Dismiss at 1-2.)

The notice requirement is codified at Tennessee Code Annotated 29-26-121(a)(1), which reads, in relevant part:

> Any person, or that person's authorized agent, asserting a potential claim for medical malpractice shall give written notice of the potential claim to each health care provider who will be a named defendant at least sixty (60) days before the filing of a complaint based upon medical malpractice in any court of this state.

*Id.* The Defendants assert that Plaintiff did not provide them with notice sufficient to satisfy this statute and that it applies to *all* actions filed, even those previously filed and dismissed without prejudice. (Defs.' Mot. at 5.) Defendants further assert that Plaintiff failed to comply with § 29-26-121(b) of the 2008 statute, which directs plaintiffs to state in the pleadings that they have complied with the notice requirement and possibly provide evidence of compliance. (*Id.* at 4.) Attached as an exhibit to the Motion is a letter from Plaintiff's counsel advising Defendants that they are re-filing the action and providing notice under the statute. (Court Doc. 40-1.) Counsel for Plaintiff states that "we do not regard the above statute as applying to our client's circumstances, [but] we are providing this notice as a good faith effort at compliance." (*Id.*) The letter is dated October 17, 2008, the day that this current action was filed. (*Id.*) Defendants contend that this notice was insufficient and does not establish compliance with the statutory requirements. (Defs.' Mot. at 3.)

Plaintiff responds to Defendants' assertions by stating that the statute should not apply in this circumstance because the "underlying purpose of this statute is to provide notice to a prospective defendant prior to filing suit for medical negligence . . . there is

simply no dispute but that the defendants were on notice of the plaintiff's claims at least since July 2, 2007." (Court Doc. 6, Pl.'s Resp. to Defs. at 4.) Plaintiff cannot cite to any case law in support of this contention because there is a dearth of case law that would interpret this statute's language and its application to the atypical situation involving a nonsuited and then reinstated action. For that matter, Defendants support their position simply by relying on a statement within Public Chapter 919, Section 3, which reads "[f]or all other purposes, this act shall take effect October 1, 2008, and shall apply to *all* actions filed on or after that date, the public welfare requiring it." Tenn. Laws Pub. Ch. 919 (emphasis added).

The Court notes that Tennessee's statute contains very similar language to a Texas statute that requires notice prior to filing "health care liability" claims. Texas Civil Practice and Remedies Code § 74.051(a) states the following:

> Any person or his authorized agent asserting a health care liability claim shall give written notice of such claim by certified mail, return receipt requested, to each physician or health care provider against whom such claim is being made at least 60 days before the filing of a suit in any court of this state based upon a health care liability claim.

*Id.* Likewise, § 74.051(b) requires that plaintiffs include a statement of compliance in their pleadings and may have to provide additional evidence of compliance. Fortunately, these statutory provisions have been in effect for some time and Texas state and federal courts have produced case law on the purpose of the notice requirement. Although not in any way binding on this Court, the interpretations do provide some guidance in determining the appropriate application of Tennessee's similar statute.

Texas state courts have held that the purpose of the notice requirement statute is

"to facilitate discussion of the merits of a potential health care claim and thereby initiate amicable settlement negotiations." *Phillips v. Sharpstown General Hosp.*, 664 S.W.2d 162, 168 (Tex. App. 1983). "The purpose of the notice requirement in a health care liability case is to encourage pre-suit negotiations and settlement and to reduce litigation costs." *Hill v. Russell*, 247 S.W.3d 356, 360 (Tex. App. 2008) (citing *De Chica v. Diagnostic Center Hosp., Inc.*, 852 S.W.2d 935, 938 (Tex. 1993)). The impetus for this law started when the Texas legislature created a commission to review the state's medical malpractice laws. *Schepps v. Presbyterian Hosp. of Dallas*, 652 S.W.2d 934, 937 (Tex. 1983). This commission wanted to create a process that would "facilitate the early identification of unmeritorious suits." *Id.* One of the commission's recommendations was that "a period of time prior to the filing of suit should be set aside for discussion between the parties, in order that an amicable agreement might be reached without the necessity for formal action." *Id.*

Although there is no Tennessee case law to indicate such an explicit purpose, there are two Tennessee sources that shed some light on the intent of the legislature to a small degree. The State of Tennessee Senate Republican Caucus newsletter for the week of April 2, 2007[9] states that "[t]he legislation is designed to reduce the number of frivolous lawsuits filed in Tennessee each year . . . by requiring early evaluation and streamlined disclosure of medical records." TN Senate Republican Caucus Weekly Wrap, April 6, 2007 (*available at* http://www.tnsenate.com/weekly2007/04-06-07.htm). A news release from the Senate Republican Caucus on April 24, 2008 contains the following relevant language:

---

[9]     Senate Bill 2001 was originally introduced in 2007.  *See* TN News Rel., S. Rep. 4/24/2008.

The State Senate has approved and sent to the governor major tort reform legislation aimed at weeding out meritless medical malpractice lawsuits.
. . .

Key provisions in the bill include:

- Notice would be provided at least two months before a lawsuit is filed *to help resolve the case before it goes to court.*

TN News Rel., S. Rep. 4/24/2008 (emphasis added). It appears, therefore, that the Tennessee statute was intended for purposes similar to those contemplated when the Texas statute was created–to provide notice to potential parties and to facilitate early resolution of cases through settlement.

The Court finds that the notice requirement has been satisfied in this case and there was no need for Plaintiff to provide the 60-day statutory notice before re-filing this action. Plaintiff's initial action was filed on July 2, 2007 against the same Defendants. Defendants clearly had actual notice of the suit prior to October 17, 2008, and had more than 60 days–from July 2007 to October 2007–to evaluate Plaintiff's claims and enter into any attempts at resolution before that suit was voluntarily dismissed without prejudice. For that matter, Defendants had an additional year to evaluate Plaintiff's claims before this action was re-filed in October 2008. Likewise, Plaintiff's failure to state compliance with this requirement in her pleadings pursuant to Tenn. Code Ann. § 29-26-121(b) is unnecessary under the circumstances of this case.

The Court cannot accept Defendants' arguments that noncompliance should be tantamount to dismissal, particularly under the unique circumstances of a nonsuited and re-filed case. Furthermore, the Court notes that Plaintiff has properly complied with one

of the Act's other requirements in § 29-26-122 by filing a Certificate of Good Faith indicating that an expert reviewed the claims and certified that they are taken in good faith. (Court Doc. 9.) It appears from the above-referenced statements that one of the other important purposes of the Medical Malpractice Act was to dispose of frivolous suits before any party incurred substantial litigation expenses. The legislature's goal of notice was satisfied when this action was initially filed in 2007, and the filing of this Certificate satisfies the goal of attempting to ensure that suits proceeding through litigation have some merit. The statute has therefore served its apparent purpose.

Accordingly, the Court finds that Plaintiff's noncompliance with the Tennessee statute does not warrant a dismissal of these Defendants. Therefore, Defendants' Motion to Dismiss is **DENIED**.[10]

## IV.     CONCLUSION

Based on the above, the Court **ORDERS** the following:

•       Defendant Vertrue, Inc.'s Motion to Dismiss [Court Doc. 30] is **GRANTED**;

•       Defendant My Choice Medical, Inc.'s Motion to Dismiss [Court Doc. 32] is **GRANTED**; and

•       Defendants Jeffrey Marvel, M.D., Marvel Clinic, P.C., Penn Plastic Surgery of Tullahoma, P.C., and The Center for Day Surgery, Inc.'s Supplemental Motion to Dismiss [Court Doc. 40] is **DENIED**.

---

[10]       The Court notes that Defendant Penn Plastic was dismissed pursuant to their separate Motion to Dismiss and the stipulation of the parties in the Court's Order of October 15, 2009. (Court Docs. 39, 45 & 46.)

**SO ORDERED** this 14th day of January, 2010.

_____/s/Harry S. Mattice, Jr._____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE