UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

SHARON JENKINS,              )
                            )
    *Plaintiff*,         )
                            )              Case No. 4:08-cv-75
v.                          )              Judge Mattice
                            )
JEFFREY MARVEL, M.D., MARVEL )
CLINIC, P.C., and THE CENTER FOR )
DAY SURGERY, INC.,          )
                            )
    *Defendants*.       )

<u>**MEMORANDUM AND ORDER**</u>

Before the Court are two motions submitted by Defendants Jeffrey Marvel, M.D., Marvel Clinic, P.C., and The Center for Day Surgery, Inc. Defendants have submitted a Motion for Summary Judgment [Court Doc. 90] and a Motion to Strike John Weeter, M.D. [Court Doc. 95]. Essentially, Defendants argue that Dr. Weeter, Plaintiff's proposed expert, does not meet the standards required for expert testimony and his testimony must be stricken, and that without his testimony, there are no genuine issues of material fact such that Defendants are entitled to judgment as a matter of law.

For the reasons explained below, Defendants' Motion to Strike John Weeter, M.D. [Court Doc. 95] will be **GRANTED IN PART** and **DENIED IN PART** and Defendants' Motion for Summary Judgment [Court Doc. 90] will be **DENIED**.

## I.    FACTS AND PROCEDURAL HISTORY

The Court will address the Motion to Strike first and will then turn its attention to the Motion for Summary Judgment. Because the facts and procedural history will be equally applicable to both Motions, however, the Court will review all the relevant facts first.

Plaintiff Sharon Jenkins ("Plaintiff") originally filed this medical malpractice and Tennessee Consumer Protection Act ("TCPA") action against the remaining Defendants and other Defendants on July 2, 2007 under docket number 4:07-cv-41. After Defendants had responded to Plaintiff's Complaint, some of the parties entered a Stipulation of Dismissal without prejudice. (4:07-cv-41, Court Doc. 33.) Plaintiff then filed a Motion to Dismiss all remaining claims against the other defendants without prejudice. (4:07-cv-41, Court Doc. 34.) The case was dismissed on October 18, 2007. (4:07-cv-41, Court Doc. 35.)

Plaintiff re-filed this action on October 17, 2008 against the same Defendants and filed her first Amended Complaint on May 14, 2009. (Court Docs. 1 & 24.) The case was originally filed against additional Defendants Penn Plastic Surgery of Tullahoma, PC, Vertrue, Inc. and My Choice Medical, Inc., but the latter two Defendants were dismissed by the Court's Order of January 14, 2010, and Penn Plastic was dismissed by a Stipulation of Dismissal. (Court Docs. 45 & 51.) After the dismissal of these Defendants and discovery, Plaintiff moved to amend her complaint again to add an informed consent claim. (Court Doc. 68.) United States Magistrate Judge Susan K. Lee granted this Motion and Plaintiff filed her second Amended Complaint on July 1, 2010. (Court Docs. 73 & 74.)

In the first Amended Complaint, Plaintiff alleges that in or about April 2006, she read an advertisement in *Cosmopolitan* magazine placed by DoctorsSayYes.net offering financing for cosmetic procedures. (Court Doc. 24, Am. Compl. ¶ 10.) Plaintiff called the number listed and was scheduled for a consultation with a doctor in Kentucky,[1] but after

---

[1] Plaintiff is a resident of Kentucky. (Am. Compl. ¶ 2.)

this appointment fell through, she was encouraged to contact Defendant Dr. Marvel in Tullahoma, Tennessee and was told that he was board certified and proficient in "tummy tucks." (*Id.* ¶¶ 12-14.) In May 2006, Plaintiff met with Dr. Marvel and obtained financing for an abdominoplasty with Avelar liposuction. (*Id.* ¶ 15.) Plaintiff submitted to this procedure on July 11, 2006. (*Id.* ¶ 16.) After the procedure, Plaintiff suffered complications and eventually submitted to a second abdominoplasty with another physician to achieve a better result. (Court Doc. 74, Second Am. Compl. ¶ 14.) Plaintiff claims that Defendants' medical treatment of her deviated from the standard of care and caused her injury and damages. (Am. Compl. ¶ 23.)

In the second Amended Complaint, Plaintiff further alleges that she and Dr. Marvel discussed the procedure and his credentials during this meeting on May 25, 2006, and that Dr. Marvel indicated that he was board certified to do "tummy tucks." (Court Doc. 74, Second Am. Compl. ¶¶ 4-5.) Plaintiff asserts, however, that Dr. Marvel is not board certified in plastic surgery and in fact has made several unsuccessful attempts to become board certified in General Cosmetic Surgery. (*Id.* ¶¶ 6.) Currently, he is only certified in Facial Cosmetic Surgery and has never been certified in a speciality that encompasses abdominal procedures. (*Id.* ¶¶ 7-8.) Plaintiff claims that she relied on Dr. Marvel's representation as to his credentials, his certification was material to her decision to have him perform the surgery, and Plaintiff would have chosen a different physician had she known that he was not certified as she expected. (*Id.* ¶¶ 11-13.) Accordingly, Plaintiff added an informed consent claim to her Complaint, alleging that Dr. Marvel intentionally and fraudulently misrepresented his credentials, which constituted a deviation from the

standard of care because Plaintiff did not have the information necessary to render informed consent for the procedure.  (*Id.* ¶¶ 17-18.)

## II.    MOTION TO STRIKE JOHN WEETER, M.D.

Defendants argue that Dr. Weeter fails as an expert witness for two reasons.  First, Defendants claim that Dr. Weeter does not satisfy the locality rule because he is not familiar with the standard of care in Tullahoma, Tennessee and is only familiar with the standard of care in Louisville, Kentucky, which is not comparable to Tullahoma, Tennessee.  (Court Doc. 95, Defs.' Mot. to Strike John Weeter, M.D. at 2.)  Second, Defendants state that Federal Rule of Evidence 702 renders Dr. Weeter's testimony inadmissable in any event because he lacks the experience and knowledge necessary to testify about Avelar abdominoplasties and his conclusions are unreliable.  (*Id.* at 12-13.)

### _____A.    Locality Rule

#### *1.    Standard of Review*

Tennessee Code Annotated § 29-26-115(a) sets forth a plaintiff's burden in a medical malpractice action.  A plaintiff must establish the following:

> (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which he practices or in a similar community at the time the alleged injury or wrongful action occurred;
>
> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
>
> (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

Subsection (a)(1) is commonly referred to as the "locality rule," which requires that a "medical expert relied upon by the plaintiff must have knowledge of the standard of professional care in the defendant's applicable community or knowledge of the standard of professional care in a community *that is shown to be similar* to the defendant's community." *Robinson v. LeCorps,* 83 S.W.3d 718, 724 (Tenn. 2002) (emphasis in original).

With this statement, the *Robinson* court established two ways to satisfy this rule; first, the "strict locality rule," by which an expert must establish familiarity with the standard of care in defendant's community at the time of the injury, and second, the "similar locality rule," which requires that the expert be familiar with the standard of care in a medical community that the expert can prove is similar to defendant's community. *Id.*; *see Totty v. Thompson*, 121 S.W.3d 676, 679-80 (Tenn. Ct. App. 2003). Under either method, the expert must go further than simply asserting that he or she is familiar with the applicable standard of care in the community. *Mabon v. Jackson-Madison County Gen. Hosp.,* 968 S.W.2d 826, 831 (Tenn. Ct. App. 1997). Rather, "the expert [] must present facts demonstrating how he or she has obtained knowledge of the standard of professional care." *Eckler v.* Allen, 231 S.W.3d 379, 385 (Tenn. Ct. App. 2006) (citations omitted). Knowledge of a "national, regional, or even state-wide standard" will not suffice to satisfy the locality rule. *Id.* at 386. The expert is not, however, required to be familiar with all the medical practices of a particular community. *Ledford v. Moskowitz,* 742 S.W.2d 645, 648 (Tenn. Ct. App. 1987). Moreover, the burden of satisfying the locality rule falls on the party who proffers the witness.

A physician attempting to satisfy this rule under the "similar locality rule" admittedly does not "ha[ve] personal knowledge about the defendant's local standard of care but may, nevertheless, give an opinion if the expert is knowledgeable about the standard of care in a similar medical community and if it is proved that the medical communities are, indeed, similar." *Badgett v. Adventist Health Sys. Sunbelt, Inc.*, M2007-02192-COA-R3-CV, 2009 WL 2365567, at *7 (Tenn. Ct. App. July 31, 2009). This similarity may be established by familiarity with medical statistics and medical resources and knowledge of the size, location of the two communities such that the communities can be favorably compared, but this alone is not necessarily sufficient. *Id.* at *7-9; *Taylor ex rel. Gneiwek v. Jackson-Madison County Gen. Hosp.*, 231 S.W.3d 361, 371 (Tenn. Ct. App. 2006) (citing *Roberts v. Bicknell*, 73 S.W.3d 106, 114 (Tenn. Ct. App. 2001)).

### 2.   *Analysis*

As the Court has outlined above, there are two ways by which an expert witness can satisfy the "locality rule" in a medical malpractice action–either by familiarity with the standard of care applicable to the defendant's medical community, known as the "strict locality rule," or by familiarity with the standard of care applicable to a community that is shown to be similar to the defendant's medical community, the "similar locality rule." *Robinson,* 83 S.W.3d at 724; *Totty*, 121 S.W.3d at 679-80.

Defendants assert that Dr. Weeter is not familiar with the standard of care in Tullahoma, Tennessee because he has never practiced there, did not know where it was located, and did not provide any information about the medical facilities available in Tullahoma. (Defs.' Mot. at 7.) Therefore, Defendants argue that Dr. Weeter cannot satisfy

the strict locality rule. (*Id.* at 7-8.) Defendants also claim that Dr. Weeter has only practiced in Louisville, Kentucky, which is dissimilar to Tullahoma, Tennessee, and that Plaintiff has not offered sufficient evidence to establish that the two communities are similar to satisfy the similar locality rule. (*Id.* at 8.) Finally, Defendants assert that Dr. Weeter cannot testify to a national or universal standard of care. (*Id.* at 9.)

Plaintiff argues that Dr. Weeter satisfies the locality with respect to the standard of care in both Nashville, Tennessee and Tullahoma, Tennessee, where Dr. Marvel practices, by virtue of his familiarity with the standard of care in similar communities. (Court Doc. 102, Pl.'s Resp. to Mot. to Strike and Mot. for Summ. J. at 12.) Plaintiff relies on Dr. Weeter's Affidavit, which states the following:

> 10. I have direct familiarity with the standard of care in Louisville inasmuch as I have continuously practiced in Louisville for the last thirty years and, further, have taught medical students as a Clinical Professor of Plastic and Reconstructive Surgery at the University of Louisville School of Medicine.
>
> 11. Nashville, Tennessee and Louisville, Kentucky are very similar communities, as demonstrated by the following:
>
> a. Nashville has an estimated population of 552,120 as of 2006;
>
> b. Louisville has an estimated population of 554,496 as of 2006;
>
> c. Nashville has numerous healthcare facilities and two medical schools, namely, Vanderbilt University Medical School and Meharry Medical College.
>
> d. Louisville has numerous healthcare facilities and a medical school, namely, University of Louisville School of Medicine.

e.  Physicians in Nashville perform aesthetic surgical procedures at facilities throughout the community;

f.  Physicians in Louisville perform aesthetic surgical procedures at facilities throughout the community;

12.   I have no direct familiarity with the standard of care in Tullahoma, Tennessee, but I have reviewed the medical and other demographics of the Tullahoma/Coffee County, Tennessee area and compared those to La Grange/Oldham County, Kentucky, a medical community with which I am familiar.

13.   Tullahoma, Tennessee and La Grange, Kentucky are very similar communities, as demonstrated by the following:

a.  Tullahoma, Tennessee is located in Coffee County, which has an estimated population of 52,521 as of 2009;

b.  La Grange, Kentucky is located in Oldham County, which has an estimated population of 58,095 as of 2009;

c.  The estimated number of housing units in Coffee County as of 2009 is 23,557.

d.  The estimated number of housing units in Oldham County as of 2009 is 20,189.

e.  La Grange is just under a 1-hour drive to Louisville, Kentucky, which has numerous facilities and a medical school.

f.   Tullahoma is just over a 1-hour drive to Nashville, Tennessee, which has numerous facilities and two medical schools.

g.   There is one (1) hospital located in Tullahoma, Harton Regional Medical Center, which is a 137-bed acute care facility with physicians practicing in over 25 specialties;

> h.   There is one (1) hospital located in La Grange, Baptist Hospital Northeast, which is a 90-bed acute care facility with physicians practicing in over 30 specialties;
>
> i.  Physicians in Tullahoma perform aesthetic surgical procedures at Harton Regional Medical Center;
>
> j.  Physicians in La Grange perform aesthetic surgical procedures at Baptist Hospital Northeast.

(Court Doc. 103, Weeter Aff. ¶¶ 10-13.)  Dr. Weeter goes on to state that he is acquainted with most of the plastic surgeons affiliated with the hospital in La Grange, Kentucky; that he attends meetings of the University of Louisville Plastic Surgeon's Journal Club with other physicians to discuss journal articles, surgical techniques, and the like; that he is a member of the Southeastern Society of Plastic and Reconstructive Surgeons, which includes physicians from several communities in Tennessee, and that discussions with these peers sometimes touch upon the standard of care in various communities; that he has worked in smaller communities in Kentucky; and that he receives referrals from several patients and physicians in smaller communities outside of Louisville, including La Grange and others.  (*Id.* ¶¶ 14-21.)  Dr. Weeter thus concludes that the standard of care for aesthetic surgical procedures is substantially similar in Louisville, Kentucky and Nashville, Tennessee, and that the standard of care is similar in La Grange, Kentucky and Tullahoma, Tennessee, such that he is familiar with the standard of care in communities similar to Nashville, Tennessee and Tullahoma, Tennessee.  (*Id.* ¶ 22.)

The Court finds that Dr. Weeter provided sufficient information in his deposition and subsequent affidavit to satisfy Tennessee's locality rule.  Dr. Weeter acknowledged in his deposition that Louisville, Kentucky and Tullahoma, Tennessee were not similar and could not provide Defendants with specific statistics about the medical resources in either

location, but was aware of its general proximity to Nashville, where Dr. Marvel maintained another practice. (Court Doc. 110-1, Weeter Dep. at 161-165, 190-192.) Dr. Weeter indicated that he was aware of what plastic surgeons were doing in and around the Louisville community because of journal clubs and meetings of the Kentucky Society of Plastic Surgeons, which comports with statements in his affidavit in which he professes knowledge of the community of La Grange, Kentucky. (*Id.* at 45-46; Weeter Aff. ¶¶ 12-13.) In the affidavit, Dr. Weeter provides facts in support of his familiarity with the La Grange, Kentucky community by stating that he is acquainted with several plastic surgeons in practice at Baptist Hospital Northeast in La Grange and interacts with these physicians at monthly journal club meetings. (Weeter Aff. ¶ 14.) Dr. Weeter indicates that these meetings involve discussions which pertain to the standard of care in the communities in which they practice. (*Id.* ¶¶ 15-16.) Finally, Dr. Weeter states that he is acquainted with several of his peers in Tennessee by virtue of his membership in the Southeastern Society of Plastic and Reconstructive Surgeons, and meetings of this organization also involve discussions touching on the standard of care in various communities. (*Id.* ¶¶ 17-19.)

These additional facts, in addition to the medical resource statistics that Dr. Weeter provides to compare Louisville, Kentucky and Nashville, Tennessee and La Grange, Kentucky and Tullahoma, Tennessee, are sufficient to satisfy the similar locality rule. The Court finds this case to be factually analogous to *Nabors v. Adams*, No. W2008-02418-COA-R3-CV, 2009 WL 2182386 (Tenn. Ct. App. July 23, 2009), and not only because it involves a plastic surgery procedure–labiaplasty–that was subsequently revised by another physician. In *Nabors*, the trial court granted summary judgment to the defendants after the plaintiff's expert witness indicated a lack of familiarity with the Memphis, Tennessee

medical community or a similar community during his deposition and did not cure this deficiency with an affidavit. *Id.* at *2. The plaintiff then filed a motion to alter or amend that judgment and submitted a supplemental affidavit with additional facts in support, but the trial court denied this motion on the same grounds. *Id.*

On appeal, the Tennessee Court of Appeals reversed the trial court's decision on the motion to alter and amend because it found that the supplemental affidavit "recite[d] specific information showing the similarities between the Atlanta and Memphis communities." *Id.* at *5-6. Specifically, the doctor "list[ed] the size of each city's population, the number of institutions of higher learning, and the number of hospitals in each city." *Id.* at *6. The *Nabors* court found that this comparison of the two communities in terms of the medical resources available was the type of information necessary to satisfy the locality rule, as outlined in *Travis v. Ferraraccio*, No. M2003-00916-COA-R3-CV, 2005 WL 2277589, at *11 (Tenn. Ct. App. Sept. 19, 2005), and not the vague generalizations about a similar standard of care warned against in *Johnson v. Pratt*, No. W2003-02110-COA-R3-CV, 2005 WL 1364636, at *8 (Tenn. Ct. App. June 9, 2005).[2]

There is no indication in *Travis* that the expert witness need to routinely practice in the specific community in which he or she is familiar for purposes of the locality rule; indeed, the Tennessee Court of Appeals allowed an expert witness in *Travis* to testify as to the standard of care in a smaller community near the larger city in which he primarily

---

[2]     In *Johnson*, the affidavit merely stated that the physician in question was familiar with the standard of care in the applicable community, but he did not practice in that community and did not provide any facts to support this conclusion. *Johnson*, 2005 WL 1364636, at *3.

practiced.  *Travis*, 2005 WL 2277589, at *2, 9-12.[3]  Like the physician in *Travis*, Dr. Weeter

has provided facts which serve to establish how he obtained knowledge of the standard

of care in La Grange, Kentucky.  *See Eckler v.* Allen, 231 S.W.3d 379, 385 (Tenn. Ct. App.

2006).   An expert witness does not have to be familiar with the "actual standard of

professional practice in the defendant's own community in order to be able to testify that

the defendant's community is similar to another community with which the expert is

familiar."  *Travis*, 2005 WL 2277589, at *11.  Dr. Weeter's familiarity with the standard of

care in La Grange, Kentucky, and the facts provided which establish that it is a similar

community to Tullahoma, Tennessee, are sufficient to satisfy the locality rule.  Defendants'

Motion to Strike is therefore **DENIED** on this basis.

### B.      Federal Rule of Evidence 702

In the event that Dr. Weeter satisfies the locality rule, Defendants alternatively argue

that his testimony should be stricken because it is inadmissible pursuant to Fed. R. Evid.

702.  (Defs.' Mem. at 10.)  Defendants assert that expert testimony is only admissible if it

is reliable and, therefore, such testimony must be based upon facts and data, be grounded

in reliable principles and methods, and must be applied to the facts of the specific case in

a reliable manner.  (*Id.*)  Defendants claim that Dr. Weeter's testimony is not reliable

because he does not have any experience performing the procedure at issue and does not

have sufficient information or training about the procedure from which to form reliable

---

[3]      The expert in question, Dr. Abrams, practiced in Kansas City, Missouri.  The Tennessee Court of
Appeals held that the trial court erred in excluding his testimony and that he should be permitted to
testify as to the standard of care in St. Joseph, Missouri (approximately an hour away from Kansas
City) because he had demonstrated his familiarity with the standard of care in the community based
on "many patient referrals" and "attendance at meetings and seminars where he discussed the
practice of medicine in St. Joseph with physicians from there."  *Id.* at *12.

opinions. (*Id.* at 11-13.) Plaintiff argues that Dr. Weeter has adequately familiarized himself with the Avelar abdominoplasty, which is simply a variation on the standard abdominoplasty that Dr. Weeter routinely performs. (Pl.'s Resp. at 17.) Plaintiff further asserts that Dr. Weeter has the experience and training required to form an opinion about the impropriety of the Avelar abdominoplasty on Plaintiff by virtue of his expertise. (*Id.* at 18-19.)

    *1.   Standard of Review*

Rule 702 reads as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. "[Federal Rule of Evidence] 702 should be broadly interpreted on the basis of whether the use of expert testimony will assist the trier of fact." *Davis v. Combustion Eng'g, Inc.*, 742 F.2d 916, 919 (6th Cir. 1984). The rule "gives district courts a 'gatekeeping role' in screening the reliability of expert testimony." *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 668 (6th Cir. 2010). "[B]efore allowing an expert's testimony to be considered by the jury, a trial court should consider: '(1) whether the reasoning or methodology underlying the expert's testimony is scientifically valid; and (2) whether that reasoning or methodology properly could be applied to the facts at issue to aid the trier of fact.'" *Gass v. Marriott Hotel Servs., Inc.*, 558 F.3d 419, 426 (quoting *United States v.*

*Smithers*, 212 F.3d 306, 315 (6th Cir. 2000)).  The reliability assessment focuses "solely on principles and methodology, not on the conclusions that they generate."  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993); *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 177 (6th Cir. 2009).  The Court is tasked to "confirm that the 'factual underpinnings of the expert's opinions [are] sound'" but must also acknowledge that "'[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *United States v. Martinez*, 588 F.3d 301, 323 (6th Cir. 2009) (quoting *Greenwell v. Boatwright*, 184 F.3d 492, 498 (6th Cir. 1999); *Daubert*, 509 U.S. at 596.)  Once the Court admits expert testimony, it is solely for the jury to determine how much weight this testimony should be afforded.  *United States v. Bonds*, 12 F.3d 540, 561 (6th Cir. 1993); *Mannino v. Int'l Mfg. Co.*, 650 F.2d 846, 851 (6th Cir. 1981).

    2.    <u>Analysis</u>

Defendants argue generally that Dr. Weeter's testimony is inadmissible pursuant to Fed. R. Evid. 702 because it is unreliable as a whole due to the fact that Dr. Weeter does not perform the Avelar abdominoplasty.  Defendants assert that the methods Dr. Weeter used to become familiar with the Avelar abdominoplasty are suspect and render his testimony inherently unreliable.  Specifically, Defendants contend that Dr. Weeter's knowledge of the procedure is limited to some YouTube video clips showing parts of the procedure, a journal article which describes the procedure, and a Google search of "Avelar abdominoplasty," which could not be sufficient to adequately educate him on this procedure  (Defs.' Mem. at 12.)  Defendants assert that Dr. Weeter "does not have

sufficient knowledge, experience, skill, or education to qualify him as an expert in a procedure he has never performed." (*Id.* at 13.)

As a general matter, the Court disagrees. Dr. Weeter completed a residency in plastic and reconstructive surgery and has practiced as a plastic surgeon for over 30 years in a practice that involves a roughly equal division between cosmetic and reconstructive plastic surgeries. (Weeter Dep. at 167-170; 182.) In his deposition, Dr. Weeter testified that he viewed some YouTube clips of the Avelar abdominoplasty before he read the journal article describing the procedure–which was an article written by Dr. Avelar, describing the variation on the abdominoplasty that he created. (Weeter Dep. at 38-40.) Dr. Weeter testified that approximately one fifth of his practice consists of performing abdominoplasties and explained, in great detail, the process involved with a standard abdominoplasty, how Dr. Avelar's abdominoplasty procedure differs from a standard abdominoplasty, and why he had formed the opinion that the Avelar abdominoplasty is an inferior procedure. (Weeter Dep. at 37-47; 86-92; 100-101; 108-113; 155-158; 169-170; 238-242.)

The Court finds that Dr. Weeter's testimony with regard to the Avelar abdominoplasty is admissible under Rule 702 because he has the experience, training and education necessary to qualify him as an expert in the field of plastic surgery. The fact that Dr. Weeter has never performed the specific procedure at issue or seen it performed is not dispositive of the reliability of his testimony. Dr. Weeter's experience with traditional abdominoplasties and his extensive knowledge of the abdominoplasty procedure qualifies him to testify on a variation of the procedure. It is clear to the Court from review of Dr. Weeter's deposition that the components of the abdominoplasty and the Avelar

abdominoplasty procedure are essentially the same–the incision, removal of fat by suction or by cutting it out, plication of the rectus sheath, relocation of the belly button, stretching of the abdominal flap, and suturing–and Dr. Weeter's knowledge of these components are based on principles he learned during his residency in plastic surgery and his experience performing adbominoplasties. (Weeter Dep. at 41-45; 100-101.) The relatively minor differences in the Avelar abdominoplasty and the apparent variation on that abdominoplasty that Dr. Marvel performed do not divorce the procedure from the traditional abdominoplasty that Dr. Weeter performs such that Dr. Weeter is not qualified to testify in this regard. Dr. Weeter's education in the field of plastic surgery, combined with his knowledge, training, and experience in the area of abdominoplasties and the knowledge he gained about the Avelar abdominoplasty, can be reliably applied to the procedure performed in the instant case.

The Court finds, therefore, that Dr. Weeter is generally qualified to testify as to the Avelar abdominoplasty. Defendants, however, make specific arguments with regard to several of Dr. Weeter's conclusions outlined in his Rule 26 disclosure, which the Court will address separately.

Dr. Weeter made the following statements in the Rule 26 disclosure:

> It is my opinion that Ms. Jenkins had a poor result characterized by residual abdominal fullness by incomplete plication of the diastasis recti between the rectus sheathes. He also failed to resect the entire thickness of the abdominal panniculus, which left excessive subcutaneous fat. His use of Mersilene woven permanent subcuticular sutures predisposed her to develop stitch abscesses, which caused painful infections and increased scars.
>
> . . .

> [Dr. Marvel] chose to use a surgical technique that is not the treatment of choice by the vast majority of plastic surgeons. . . . For the most part, the technique of an Avelar abdominoplasty is one performed mostly a by [sic] physician that call themselves "cosmetic surgeons" and who's [sic] training is not in the specialty of plastic surgery. Many of them are otolaryngologists, OB-GYN surgeons, general surgeons, dermatologists, and emergency medicine specialists, who are doing cosmetic surgery that is outside the scope of practice of their formal residency training.
>
> . . .
>
> Dr. Marvel is not qualified as a plastic surgeon. His residency was begun in general surgery and completed in Otolaryngology-Head and Neck Surgery.

(Court Doc. 95-2 at 5-6.) In response to the question "In what specific ways did Dr. Marvel deviate from the standard of care?" Dr. Weeter wrote, "[h]e chose the wrong operation for a patient of this body habitus and made the errors stated above." (*Id.* at 5.) In Plaintiff's Supplemental Rule 26 Expert Disclosures, Plaintiff added that "Dr. Weeter will testify that the misrepresentations made by Dr. Marvel to Mrs. Jenkins regarding his credentials prior to her surgery were a deviation from the standard of care." (Court Doc. 76.)

### a. Misrepresentation of Credentials

Defendants first argue that Dr. Weeter's opinion in this regard was discredited during his deposition because Dr. Weeter agreed that "it is not his role to offer opinions as to whether Dr. Marvel misrepresented his credentials to Plaintiff in discussions prior to her surgery." (Defs.' Mem. at 14.) Actually, Dr. Weeter agreed that he could not tell the jury who was telling the truth about what Dr. Marvel said and that his basis for stating that he had misrepresented his qualifications came solely from Plaintiff's deposition testimony. (Weeter Dep. at 206, 209.) The Court cannot conceive of another way by which Dr.

Weeter could have obtained Plaintiff's version of their conversation, nor can it conceive of any reason why this fact would discredit his opinion. Certainly Plaintiff's expert would have to rely upon her version of events in forming an opinion, and there is nothing about that process which would call into question the resulting opinion.

If, upon hearing Plaintiff's version of events, Dr. Weeter opined that Dr. Marvel misrepresented his credentials by not informing Plaintiff that he was not board certified in general cosmetic surgery and was only board certified in facial cosmetic surgery, Dr. Weeter is qualified to testify that this statement was a deviation from the standard of care. Dr. Weeter only need know the applicable standard of care for performing such a procedure and representing credentials to a patient to testify as to this issue, and he needs no additional, particularized training or experience to form such an opinion. The Court finds that Dr. Weeter can testify reliably as to whether Dr. Marvel's representation of his credentials–as reported to him by Plaintiff–was a deviation from the standard of care.

b.   <u>Resection of Panniculus</u>

Defendants next argue that Dr. Weeter contradicted the opinion stated in his Rule 26 disclosure because he testified in his deposition that Plaintiff's panniculus was gone. (Defs.' Mem. at 15.) The Court does not see the contradiction. In the Rule 26 disclosure, Dr. Weeter wrote that Dr. Marvel "failed to resect the *entire* thickness of the abdominal panniculus, which left excessive subcutaneous fat." (Court Doc. 95-2 at 5.) (emphasis added). In his deposition, Dr. Weeter stated that Dr. Marvel removed the panniculus but said that Dr. Marvel did not improve Plaintiff's contour "as much as the panniculus because she still has a rounded convexed abdominoplasty in profile" which would seem to comport with Dr. Weeter's statement that one of the disadvantages of an Avelar abdominoplasty

is that it leaves unnecessary tissue underneath the skin. (Weeter Dep. at 90-91, 108.) Specifically, Dr. Weeter testified that an Avelar abdominoplasty differed from a mini abdominoplasty because "in a mini abdominoplasty, one would resect the tissue underneath the skin rather than just simply suction it out and then try to bury what's left or cover up what's left." (*Id*. at 100.) When asked about the statement in his Rule 26 disclosure regarding the resection of the panniculus, Dr. Weeter stated, "I think that was a misunderstanding about the proper term of the abdominal panniculus, and I would say her abdominal panniculus was removed. Whether it was really resected or not I don't know, but it's gone." (*Id.* at 252.) The Court interprets the statements made in Dr. Weeter's Rule 26 disclosure as addressing the disadvantage of the Avelar abdominoplasty with regard to the extra fat and tissue it leaves underneath the skin. Because Defendants have a specific argument with regard to Dr. Weeter's conclusions and criticisms that the Avelar abdominoplasty was an inappropriate procedure for Plaintiff, the Court will address this issue in the next section.

                  c.    <u>Wrong Procedure</u>

Defendants assert that Dr. Weeter cannot testify that the Avelar abdominoplasty is not a procedure typically performed by plastic surgeons and that it was the wrong choice of procedure for Plaintiff because these conclusions are not supported by reliable methodologies. (Defs.' Mem. at 15.) Defendants argue that Dr. Weeter came to these conclusions based solely on his Google search of the term "Avelar abdominoplasty," which was not done to determine if board certified plastic surgeons performed the procedure, but was rather Dr. Weeter's preliminary research as to what the procedure entailed. (*Id.* at 15-16.) Moreover, Dr. Weeter outlines several problems he has with the Avelar

abdominoplasty, but could not reference any journal articles to substantiate these criticisms. (*Id.* at 16.) Defendants also point out that Dr. Weeter conceded that surgeons could disagree about the propriety of particular procedures, but this disagreement does not rise to a deviation from a standard of care–which, to Defendants, makes Dr. Weeter's opinion about the propriety of the procedure for Plaintiff more about his disregard for physicians who are not formally trained in plastic surgery performing plastic surgery procedures rather than valid concerns with the Avelar abdominoplasty procedure. (*Id.* at 16-17.)

As to Dr. Weeter's conclusion that the Avelar abdominoplasty is not a procedure typically performed by physicians who are board certified in plastic surgery, the Court agrees that this is a broad and overreaching conclusion that is not based on specific facts or data. The Court notes, however, that this is less of a challenge to conclusions reached by an expert witness and more of a challenge to something to which a witness has no personal knowledge. Moreover, as to the question of personal knowledge, Dr. Weeter testified at length in his deposition about the plastic surgeons with whom he is familiar who he knows do not perform this procedure and stated that it was never a procedure that has been addressed or presented, to Dr. Weeter's knowledge, during residency training, at meetings of the American Society for Aesthetic Surgery, other group annual meetings, or as a training course. (Weeter Dep. at 46-55; 64-73; 246.) For this reason, the Court will permit Dr. Weeter to testify as to that which he has personal knowledge; specifically, Dr. Weeter may testify about board certified plastic surgeons with whom he is familiar who do not perform the Avelar abdominoplasty, and Dr. Weeter may also testify as to the absence of this procedure from discussions at annual meetings and training courses. Dr. Weeter

cannot make the broad statement that the only physicians performing the Avelar abdominoplasty are those who are not board certified in plastic surgery, because he does not know this to be true. The Court will, however, permit Dr. Weeter to emphasize that the trend among the board certified plastic surgeons with whom he is familiar is to perform different kinds of abdominoplasty procedures, and Dr. Weeter may opine as to why these other procedures are routinely employed.

With regard to Dr. Weeter's criticisms of the Avelar abdominoplasty, the Court does not agree with Defendants' position that Dr. Weeter's reservations have to be reduced to writing in a peer-reviewed journal to be reliable. "[A] physician need not 'demonstrate a familiarity with accepted medical literature or published standards in [an area] of specialization in order for his testimony to be reliable in the sense contemplated by Federal Rule of Evidence 702.'" *Gass*, 558 F.3d at 427 (quoting *Dickenson v. Cardiac & Thoracic Surgery of Eastern Tenn.*, 388 F.3d 976, 980 (6th Cir. 2004)). Rather, *Dickenson* pointed out that an expert could be qualified based on experience. *Dickenson*, 388 F.3d at 980-81. Dr. Weeter's experience performing abdominoplasties is sufficient to qualify him to testify as to why he uses his preferred form of abdominoplasty, his criticisms of the Avelar abdominoplasty and why he has never employed the procedure, and his reasons for opining that the Avelar abdominoplasty was a poor choice of procedure for Plaintiff's body type.

If surgeons can routinely disagree on the best choice of procedure for a particular patient, the opinion as to why one procedure is better for a certain type of patient over another is undoubtedly based on training and experience. The specifics of that opinion may or may not be shared by other physicians or written in journal articles, but that does

not necessarily make the opinion unreliable, less valid, or based on faulty information. While it may be accurate to state that most of these disagreements do not constitute a deviation from the standard of care, if the disagreement in the instant case rises to a level such that Dr. Weeter opines that the choice of the Avelar abdominoplasty constituted a deviation from the standard of care, Dr. Weeter is entitled to and qualified to share that opinion. Defendants will have the opportunity to refute this opinion through cross examination and testimony of their own expert witness. Indeed, this method of response to Dr. Weeter's testimony would highlight the disagreement which might commonly occur among surgeons making such a choice, and the jury will then have the opportunity to decide which expert opinion to afford more weight–and whether the disagreement is severe enough to establish a deviation from the standard of care.

### d. Development of Stitch Abscess

Defendants represent that Dr. Weeter's opinion with regard to Dr. Marvel's use of Mersilene sutures is similarly unreliable because Dr. Weeter agreed that the choice of suture is up to the surgeon, agreed that all sutures have the potential to "spit," or come to the surface, and stated that Plaintiff's smoking may or may not have caused the spitting. (Defs.' Mem. at 19-20.) These statements make the suture dispute sufficiently vague such that the Court will not permit Dr. Weeter to testify specifically that the choice of Mersilene sutures was a deviation from the standard of care, as this conclusion is not supported by any reliable facts, and causation from the use of these sutures to any injuries suffered by Plaintiff is certainly less than clear. Dr. Weeter may, however, testify about the choice of sutures as one part of his opinion that the choice of procedure for Plaintiff and the resulting poor outcome constituted a deviation from the standard of care. Again, Defendants will

have the opportunity to rebut this opinion through cross-examination and by the use of their own expert, who can testify that the complications Plaintiff experienced were attributable to the fact that she continued smoking and not due to the use of Mersilene sutures.

The Court declines to accept the bulk of Defendants' argument that Dr. Weeter's testimony is unreliable pursuant to Fed. R. Civ. P. 702. Accordingly, Defendants' Motion to Strike John Weeter, M.D. [Court Doc. 95] is **GRANTED IN PART** and **DENIED IN PART**. The Court will not permit Dr. Weeter to testify broadly that no board certified plastic surgeons perform the Avelar abdominoplasty or specifically that the use of Mersilene sutures was a deviation from the standard of care, but Dr. Weeter may testify as to all of his other opinions and conclusions.

## III.    MOTION FOR SUMMARY JUDGMENT

### A.    Standard of Review

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may bear this burden by either producing evidence that demonstrates the absence of a genuine issue of material fact, or by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. To refute such a showing, the nonmoving party may not simply rest on its pleadings. *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996); *see Anderson*, 477 U.S. at 249. The nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Celotex*, 477 U.S. at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Anderson*, 477 U.S. at 254. Thus, if the plaintiff must ultimately prove his case at trial by a preponderance of the evidence, the Court must, on a motion for summary judgment, determine whether a jury could reasonably find by a preponderance of the evidence that the plaintiff's factual contentions are true. *See id*. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the Court concludes that a fair-minded jury could

not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## B. Analysis

Defendants submit the affidavits of Dr. Gerald Edds and Dr. Marvel to establish that Dr. Marvel complied with the standard of care in his treatment of Plaintiff and assert that there are no genuine issues of material fact in this case such that they are entitled to judgment as a matter of law. (Court Doc. 91, Defs.' Mem. of Law in Supp. of Mot. for Summ. J. at 6.) Defendants contend that without Dr. Weeter's testimony, it is impossible for Plaintiff to raise a genuine issue of material act and, because Dr. Weeter recanted his opinions in his deposition, even if his testimony is admissible, it will not raise any material issues of fact. (*Id.* at 6-7.) Plaintiff argues that Dr. Weeter's opinions create genuine issues of material fact as to whether Dr. Marvel deviated from the standard of care, and that summary judgment is not appropriate. (Pl.'s Resp. at 20.)

The Court has granted in part and denied in part Defendants' Motion to Strike Dr. Weeter as Plaintiff's expert witness. In this Order, the Court has determined that Dr. Weeter's testimony is admissible and has permitted him to testify as to most of his opinions and conclusions. Therefore, Plaintiff has admissible expert testimony on which to rely to establish a genuine issue of material fact, and the Court must now evaluate whether this testimony will create such an issue of material fact which would render summary judgment for Defendants inappropriate.

The Court finds that there are genuine issues of material fact that cannot be resolved at the summary judgment stage. First, there is an issue of material fact as to what Plaintiff was told with regard to Dr. Marvel's certification and credentials. Plaintiff states that she specifically asked Dr. Marvel if he was board certified to do tummy tucks during their initial consultation, and he responded that he was. (Pl.'s Resp. at 2.) Dr. Marvel testified that he told Plaintiff he was board certified in cosmetic surgery and did not say anything about abdominoplasty, tummy tucks, or general cosmetic surgery. (*Id.* at 3.) There is a genuine issue of material fact as to what Dr. Marvel told Plaintiff about his certifications, and only the jury can decide what he told Plaintiff after hearing testimony from both parties. Moreover, Plaintiff's expert, Dr. Weeter, opines that Dr. Marvel's answer was misleading and deviated from the standard of care because he was misrepresenting his credentials. (Weeter Aff. ¶¶ 27-28.) The jury will likewise need to decide if Dr. Marvel's statement, whatever it may be, misrepresented his credentials such that it was a deviation from the standard of care.

There is also a genuine issue of material fact with regard to whether Dr. Marvel deviated from the standard of care in his choice and performance of the Avelar abdominoplasty. There is a dispute as to whether it was an appropriate procedure for Plaintiff and as to what factor or factors caused her complications. Defendants' expert witness, Dr. Edds, opined that Plaintiff's habit of smoking which continued during her post-operative period may have caused delays in healing, compromised her recovery, and caused the "spitting" of sutures, such that any injury was caused by her own actions and not any negligence by Dr. Marvel. (Court Doc. 94-1, Edds. Aff. ¶¶ 9, 12-13.) Dr. Weeter, on the other hand, testified during his deposition that Plaintiff's smoking may or may not

have caused all of her complications and that her poor result was likely rather due to the wrong choice of procedure for her body type which left excess tissue under the skin, Dr. Marvel's large opening for the umbilical stalk which caused her umbilicus to protrude, and his use of sutures which were more likely to "spit."  (Weeter Dep. at 89-90; 137-138; 144-146; 210-212; 222-224; 273.)  The Court cannot make the factual determination that one factor or another caused Plaintiff's complications; rather, it is for the jury to hear the expert testimony from both sides, decide how much weight should be afforded to the opinions of each expert, and decide if Plaintiff has established that her injuries were caused by a deviation from the standard of care.

The Court finds that there are genuine issues of material fact that must be submitted to a jury and the Court cannot grant Defendants judgment as a matter of law.  Accordingly, Defendants' Motion for Summary Judgment [Court Doc. 90] is **DENIED**.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Strike John Weeter, M.D. [Court Doc. 95] is **GRANTED IN PART** and **DENIED IN PART** and Defendants' Motion for Summary Judgment [Court Doc. 90] is **DENIED**.

**SO ORDERED** this 15th day of December, 2010.

_____*/s/Harry S. Mattice, Jr.*_____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE